[No. 11679.  Department Two.  January 16, 1915.]

ANDREA RASMUSSON, *as Administratrix etc., Respondent,* v.
NORTH COAST FIRE INSURANCE COMPANY *et al.,*
*Appellants.*

ANDREA RASMUSSON, *as Administratrix etc., Respondent,* v.
DUBUQUE FIRE & MARINE INSURANCE COMPANY,
*Appellant.*[1]

INSURANCE—FIRE INSURANCE—POLICY—FRAUD — FALSE REPRESEN-
TATIONS—EVIDENCE—SUFFICIENCY.  In an action upon fire insurance
policies, the verdict of the jury to the effect that the plaintiff had
not knowingly made any false statements in representing the value
of his stock of goods, cannot be disturbed merely because the jury,
in answer to special interrogatories, fixed the amount of his loss at
about $2,000, the plaintiff claiming $3,000 and the defendants claim-
ing that the loss did not exceed $1,200, where the estimates of ex-
perienced adjusters differed widely as to the probable loss and there
was no suggestion of fraud or wrongful action in any other particu-
lar and no proof that plaintiff knowingly made any false state-
ments.

SAME — ACTION ON POLICY — STATUTORY PROVISIONS — VALUE OF
PROPERTY LOST—EVIDENCE—ADMISSIBILITY.  In an action upon fire
insurance policies on a stock of groceries, agents who wrote and
issued the policies may be called by the plaintiff to testify to the
value of the stock at the time the policies were written and at the
time of the fire, under 3 Rem. & Bal. Code, § 6059-105, providing that
every agent who issues a fire insurance policy shall be presumed to
know the value of the property insured, and shall be punishable by
fine in case he knowingly issues policies in excess of the value of
the property; the evident purpose of the statute being to prevent
over-insurance.

EVIDENCE—REBUTTAL—REPUTATION OF DECEASED PARTY—ADMISSI-
BILITY.  In an action upon fire insurance policies, where the defense
was that the insured, in making his proofs of loss, swore falsely,
and fraudulently and intentionally overstated values and losses with
intent to defraud, and where the insured died before the trial, it
is admissible, in rebuttal of defendants' charges, to show the de-
ceased's reputation for honesty and integrity.

[1]Reported in 145 Pac. 610.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 14, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action on fire insurance policies. Affirmed.

*Zent, Powell & Redfield* and *McBurney & O'Connor*, for appellants.

*O. C. Moore*, for respondent.

CROW, J.—These two actions, which have been consolidated, were commenced by J. K. Rasmusson on two separate policies of fire insurance for $1,000 and $2,000 respectively, executed and delivered to him by the defendant North Coast Fire Insurance Company, a corporation, and Dubuque Fire & Marine Insurance Company, a corporation, on a stock of merchandise in the city of Spokane. After the commencement of the actions and before trial, the death of J. K. Rasmusson was suggested, and Andrea Rasmusson, administratrix of his estate, was substituted as plaintiff. From verdicts and judgments in plaintiff's favor, the defendants have appealed.

For many years J. K. Rasmusson was engaged in the retail grocery business in Spokane and carried fire insurance on his stock of goods. On December 27, 1911, the appellant North Coast Fire Insurance Company executed and delivered policy No. 24,550 to Rasmusson, insuring his stock of groceries and certain fixtures against loss by fire in the sum of $1,000. On August 9, 1911, the appellant Dubuque Fire & Marine Insurance Company executed and delivered policy No. 741,357 to Rasmusson insuring the same stock and fixtures against loss by fire in the sum of $2,000. On January 26, 1912, while both policies were in full force and effect, the groceries and fixtures were damaged by fire. Mr. Rasmusson, in due season, prepared and delivered proofs to appellants, claiming the loss sustained by him exceeded the face value of the two policies. These proofs were re-

jected by appellants who, in their answers, contend that his losses did not exceed $1,200.

The policies each contained a stipulation which provided that "this entire policy shall be void . . . in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after the loss." Basing their defenses on this provision, the appellants in substance alleged that Mr. Rasmusson made and delivered to each of them a false and fraudulent statement of his alleged loss, in that he stated that the same amounted to $3,040.13, whereas it did not exceed $1,200 in all; that he made such false statements with the fraudulent intent and design of inducing appellants to pay him the full amount of the policies; that he fraudulently represented that, within two years preceding the fire, he had purchased goods to the value of $29,756.26, whereas his purchases during that period did not exceed $23,797.11.

Mr. Rasmusson, in his reply, admitted that he made such statements in his proof of loss, and in response to interrogatories, but alleged that he then believed and still believes the same to be correct and true. The principal issues submitted to the jury were the extent and value of the stock of groceries and fixtures owned by the assured at the date of the fire, the extent of loss sustained, and whether the assured had, with fraudulent intent, misrepresented the value of his stock and fixtures and the extent of his loss with the design and for the purpose of defrauding appellants. The jury returned a general verdict, which included interest, in the sum of $720.16, against the North Coast Fire Insurance Company, and in the sum of $1,467.84 against the Dubuque Fire & Marine Insurance Company. The jury also answered special interrogatories as follows:

(1) What was the value of the goods, wares and merchandise (not including fixtures) at the store of Mr. Rasmusson at the time of the fire? Answer: $2,100.

(2)    What was the value of the goods, wares and merchandise (not including fixtures) at the store of Mr. Rasmusson immediately after the fire. Answer: $162.

(3). What was the amount of damage to the fixtures covered by the policies of insurance in this case occasioned by the fire? Answer: $250.

Appellants' principal contention is that the trial court erred in denying their motions for judgment notwithstanding the verdict, their position being that the undisputed evidence shows that the loss sustained by the assured did not exceed $1,200; that he misrepresented the value of his stock of goods, the purchases made by him, and the extent of his loss; that he did so knowingly and wilfully with the intention and purpose of defrauding appellants, and that, under the provision above quoted, the policies were avoided by such fraudulent acts.

In their brief, appellants say:

"The Rasmusson proof of loss listed the value of the stock prior to the fire at $2,750.67—the jury found it to have been $2,100. The proof of loss claimed damage to stock of $2,618.48, the jury placed it at $1,938. The proof of loss claimed damage to fixtures as $421.65; the jury found this item $250. This is a reduction of a fraction over 25 per cent on the claimed loss to stock, and 40 per cent on fixtures."·

They argue that the finding of the jury as to values amounts to a finding of fraud; that fraud is also shown by the undisputed evidence, and that it was the duty of the trial court to enter judgment in their favor. We have carefully examined the record and conclude that appellants' contention · in this regard cannot be sustained. The estimates made by appellants' adjusters showing losses sustained, to a considerable extent, constitute evidence which they claim to be undisputed. Without these estimates and appellants' deductions therefrom, they would have no basis for their contention. These adjusters were appellants' representatives, who were looking after their interests and seeking to

protect them. There is no more reason for accepting their estimates as undisputed than there would be for accepting the estimate prepared by respondent's representative, an experienced adjuster, as undisputed. The fact is that these estimates dispute each other, and the record shows that the evidence is otherwise conflicting. Appellants admit that, to sustain their defense, it is not sufficient for them to show that Mr. Rasmusson made false statements and that he padded his proofs of loss, but that it must also be shown that he did so knowingly and intentionally for the purpose of defrauding them. The evidence is too voluminous to be set forth or analyzed in an opinion of moderate length.

It appears that, at or about the time of the fire, the assured was in very bad health; that he died prior to the trial of these actions; that a dispute arose between him and the adjusters representing the appellants; that, when they advised him of their conclusions, he left them saying he would have nothing to do with their estimate, as his stock and losses were several times the values and losses fixed by them; that he procured the services of an experienced adjuster to prepare an estimate upon which to base proofs of loss, and that this adjuster and Mr. Rasmusson's son, a young man about twenty-one years of age, who had worked in the store for some time and had made purchases to replenish the stock, prepared an estimate. Their estimate and that of appellants' adjusters differed widely. The findings of the jury as nearly approximate that of the assured as those of the appellants' adjusters. There was no showing that the assured had recently increased his insurance, or that he was carrying over-insurance for fraudulent purposes. The policies were renewals of previous policies for the same amounts. No contention is made that the assured was in any way responsible for the fire. In fact, the evidence is clearly to the contrary. The agents who wrote the policies on behalf of the appellants, and who saw the stock of goods, gave it as their opinion that the assured had a stock

ranging in value from $3,000 to $3,500. There is no suggestion that they acted fraudulently or conspired with the insured for the purpose of writing excessive insurance. Nor is there any showing of any facts indicating a design on the part of the assured to over-insure or defraud the appellants at any time prior to the making of the proofs of loss. At that time, a sharp difference of opinion arose between him and appellants' adjusters. We cannot say, as a matter of law, that he then made any untruthful statements knowingly or with an intention of defrauding appellants. The trial court, by careful instructions which correctly stated the law, submitted the issues of false statements and fraudulent intention to the jury. To these instructions no exceptions have been taken. The jury have found against appellants, and our conclusion is that their verdict cannot be disturbed.

The plaintiff called as witnesses one J. H. Tilsley and one W. A. Junkin, the agents of appellants, who wrote and issued the policies of insurance. These witnesses testified to the value of the stock of goods and fixtures at the time the policies were written and also at or about the time of the fire. Appellants objected to this testimony on the ground that the competency of the witnesses was not shown. It appeared that Tilsley was in the grocery business for about nine years prior to 1900, and that Junkin had kept books in a grocery for about one year. The trial court, however, permitted them to testify by reason of § 105 of chapter 49, Laws of 1911, page 243 (3 Rem. & Bal. Code, § 6059-105), which reads as follows:

"Every insurer who makes insurance upon any building or property or interest therein against loss or damage by fire, and every agent who issues a fire insurance policy covering on any building or property or interest therein, and every insured who procures a policy of fire insurance upon any building or property or interest therein owned by him is presumed to know the insurable value of such building or property or interest therein at the time such insurance is effected. Any insurer who knowingly makes insurance on

any building or property or interest therein against loss or damage by fire in excess of the insurable value thereof, shall be fined in a sum not less than fifty dollars nor more than one hundred dollars. Any agent who knowingly effects insurance on a building or property or interest therein in excess of the insurable value thereof, shall be fined in a sum not less than fifteen nor more than twenty-five dollars. Any person or party who knowingly procures insurance against loss or damage by fire on any building or property or interest therein owned by him in excess of its insurable value shall be fined in a sum not less than twenty-five dollars nor more than one hundred dollars."

The evident purpose of this section is to prevent over-insurance. It certainly contemplates that an agent, before placing a policy, will, by proper investigation, advise himself of the value of the property to be protected, and the presumption is that he has done so. In view of this statute, we can find no error in admitting the evidence of which appellants now complain. Other evidence tending to show value was also introduced by the respondent.

Mr. Rasmusson, the assured, died before the trial and his evidence could not be secured. Appellants by their evidence sought to show that, when he prepared, and by his oath verified, the proofs of loss, he fraudulently and intentionally overstated values and losses for the purpose of defrauding them. On rebuttal, respondent called a number of prominent business men of Spokane who had known Mr. Rasmusson during his lifetime. These witnesses, over appellants' objection, were permitted to testify that the reputation of Mr. Rasmusson for truth, veracity, honesty, and integrity was good. Appellants now insist that error was committed in admitting this evidence. They argue that, in civil actions, evidence of good character is not admissible except where character is directly in issue. In support of this position, they cite *Carter v. Seattle*, 19 Wash. 597, 53 Pac. 1102, and *Poler v. Poler*, 32 Wash. 400, 73 Pac. 372, from this court, and additional authorities from other jurisdic-

tions. The case of *Carter v. Seattle,* was one to recover damages for personal injuries. Contributory negligence was pleaded and evidence was introduced by the defendant tending to show plaintiff's intoxication at the time of the injury. Thereupon plaintiff testified that he had not been drinking on the evening of the accident, and also introduced witnesses to testify to his reputation for sobriety. It was held that the admission of this evidence was erroneous. The character of the plaintiff for integrity was not in issue. Moreover, the plaintiff himself was present in court and testified. Assigning reasons for the ruling made, this court said:

"The general and well settled rule in negligence cases is that it is not proper for a plaintiff, in order to rebut evidence of particular acts of negligence, to show that he is generally careful, cautious and prudent; nor can it be shown that a party is habitually careless to support a claim of negligence upon a particular occasion. The principle underlying these cases and the case at bar is that such evidence raises a collateral issue not affecting the question to be determined."

This is not a case where the issue of negligence is involved. Here the assured, who was dead at the time of the trial and could not be called to testify, was positively charged with fraudulent acts and false swearing in his proof of loss for the purpose of securing a much larger recovery than that to which he was entitled. An examination of the case of *Poler v. Poler* will show that it has no bearing on the question now before us. It was there held that the defendant, in an action for divorce, could not introduce witnesses to show his general reputation as a law-abiding and moral man, that not being an issue in the case. While the general rule seems to be that character evidence is ordinarily inadmissible in a civil action, there is some conflict of authority and certain exceptions are recognized. We think an exception should be recognized in this case where the assured died prior to the trial and his evidence could not be pro-

cured.   The jury did not have an opportunity to pass upon his credibility by observing his appearance upon the witness stand.   As above stated, it was charged by appellants that he had perpetrated a fraud and that in doing so he had sworn to false statements set forth in his proofs of loss. This amounted to a substantial charge of perjury.   His denial of this charge could not be obtained.   It seems to us that, under these circumstances, there was no error in permitting the plaintiff to show his reputation for honesty and integrity.   There are courts that hold that, in civil actions, when the character of a plaintiff is assailed by the defense interposed, evidence of his good character is admissible. *Mosley v. Vermont Mut. Fire Ins. Co.*, 55 Vt. 142; *Fire Ass'n of Philadelphia v. Jones* (Tex. Civ. App.), 40 S. W. 44; *Allison v. McClun*, 40 Kan. 525, 20 Pac. 125; *Houston Elec. Co. v. Faroux* (Tex. Civ. App.), 125 S. W. 922; *Cudlipp v. Cummings Export Co.* (Tex. Civ. App.), 149 S. W. 444.

· We do not feel that we would be justified in holding the admission of the character evidence was prejudicial.   The judgment is affirmed.

MORRIS, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.