### BAKER et al. v. FIRST NAT. BANK OF SANTA ROSA, N. M.

, No. 24065.   Jan. 14, 1936.

Rehearing Denied Feb. 18, 1936.

Billups & Billups, for plaintiffs in error.

Tomerlin & Chandler, Troy Shelton, and Richard W. Fowler, for defendant in error.

OSBORN, V. C. J.   This action was instituted in the district court of Oklahoma county by the First National Bank of Santa Rosa, N. M., hereinafter referred to as plaintiff, against Neil J. Baker, J. B. Malone, and J. M. Malone, hereinafter referred to as defendants, as an action in replevin wherein it was sought to recover possession of certain negotiable bonds.   The cause was tried to a jury and a verdict was rendered in favor of defendants.   A motion for new trial was filed by plaintiff and sustained by the trial court.   From this order defendants have appealed.

Bonds in the amount of $22,000 were stolen from plaintiff, First National Bank of Santa Rosa, N. M., sometime prior to June 19, 1931.   Several days thereafter certain of these bonds were found in the possession of defendants.   After some negotiation and investigation this action was instituted.   Defendants by answer admitted that the bonds in their possession were stolen from plaintiff, but pleaded that they were innocent holders thereof for value without notice.

The defendant Neal J. Baker pleaded and testified that he procured the bonds from one J. L. White, who negotiated the same to him as security for a loan and at the same time executed to him a bill of sale and a contract to repurchase the bonds within a period of 30 days.

J. B. Malone and J. M. Malone testified that they loaned certain sums of money to Neil J. Baker and accepted said bonds as security for said loans.   Plaintiff filed a reply to the separate answers of defendants in which it was denied that defendants were holders of the bonds in due course.   We quote from the reply to the answer of Neal J. Baker as follows:

"Plaintiff alleges that at and before the time said defendant acquired said bonds defendant knew that the party from whom said defendant acquired said bonds was not

a bona fide holder thereof for value in due course.

"Plaintiff further alleges that before and at the time said defendant acquired said bonds he had actual knowledge and notice that said bonds had been stolen.

"Plaintiff further alleges and states that before and at the time said defendant acquired said bonds said defendant, Neil J. Baker, had knowledge of such facts that his action in taking said bonds amounted to bad faith on his part."

Similar allegations were contained in the reply to the answers of J. B. Malone and J. M. Malone. The evidence is conflicting. Defendants offered evidence to substantiate the allegations of the answer regarding the transaction with J. L. White. Further evidence was to the effect that White had disappeared and that they had been unable to locate him after it was discovered that the bonds were stolen.

Plaintiff introduced as a witness one R. H. Morgan who testified that he was one of the attorneys representing the parties who held up and robbed the plaintiff bank; that he was employed by said parties while they were being held in the county jail at Lawton; that at the same time three other parties were held in said jail for investigation on the same charge, who procured their release from jail by writ of habeas corpus; that one of these parties was named Boss Jackson; that the said Jackson procured the bonds involved herein at Anadarko, and that he and Jackson brought them to Oklahoma City. The witness further testified that he delivered these bonds to defendant Baker, and after some negotiation Baker agreed to pay and Jackson agreed to accept $7,500 of bonds and that Baker retained out of said amount $300 as a commission: that upon payment of the $7,200 to Jackson in cash the bonds were delivered to Baker.

Defendants assumed the burden of proof and after the introduction of evidence on behalf of defendants and plaintiff, defendants, by way of rebuttal, called certain witnesses to testify as to their general reputation as law-abiding citizens. Over the objections of plaintiff this evidence was received and submitted to the jury.

After a verdict in favor of defendants was returned by the jury a motion for a new trial was filed by plaintiff setting up 22 specifications of error. The trial court overruled the motion for new trial as to 21 of

the grounds relied upon, but sustained the same upon one ground which is as follows:

"Error of the court in permitting the defendants to introduce testimony as to the general reputation of the defendants being law-abiding citizens."

As presented in the briefs there is but one question certified to this court for a decision and that is whether or not under the issues involved in this case such evidence was properly admitted. The argument of defendants is based upon the following proposition:

"Where the pleadings and the proof bring into question, on the part of the plaintiff, the character and good standing of the defendants in their community, evidence is competent to show their standing as law-abiding citizens, and especially is this true where the plaintiff has sought to directly discredit and impeach their testimony."

The record does not disclose that any evidence was offered by defendants relating to their general reputation for truth and veracity. The inquiries were confined as to general reputation as law-abiding citizens.

It is contended by defendants that by the pleadings and evidence defendants were charged not only with bad faith but were charged with the commission of a felony under the provisions of section 2265, O. S. 1931.

Defendants concede that as a general rule in civil actions such evidence is not admissible, but contend that this case falls within certain exceptions heretofore recognized in this and other jurisdictions.

The case of Woodmen of the World v. Welch, 16 Okla. 188, 83 P. 547, was an action on a life insurance policy. The policy provided that if the insured should die as a consequence of a violation of the law the same would be void. The insured was killed in an altercation with one Ennis. There was a sharp conflict in the evidence as to whether the insured or Ennis provoked the difficulty. Evidence of the character of insured for being a peaceable and law-abiding citizen was admitted over the objection of the defendant. The opinion holds that such evidence was admissible on the theory that the intent of the insured was a material inquiry and where, under the facts and circumstances, the question of intent was in doubt, character evidence was admissible to aid in the determination of such question.

The case of Great Western Insurance Co. v. Sparks, 38 Okla. 395, 132 P. 1092, was also an action on a life insurance policy. The defense was that the insured had made fraudulent misstatements of fact in his application for insurance. The trial court permitted the introduction of evidence as to the general reputation of the insured for being a truthful, honest, law-abiding citizen. The opinion of this court prepared by Mr. Justice Kane holds that the admission of such evidence constituted reversible error.

The case of National Council Knights and Ladies of Security v. Owen, 47 Okla. 464, 149 P. 231, was likewise an action on an insurance policy. In that case the defense was that deceased had taken out large amounts of insurance in various companies with a fraudulent design to maim himself and defraud said insurance companies. The evidence disclosed that he had taken out large amounts of insurance and had come to his death by means of a gunshot wound inflicted by himself. The evidence as to the shooting was circumstantial. It was held that the cause would not be reversed because the trial court admitted evidence of the good reputation of deceased. The court approved the rule announced in Woodmen of the World v. Welch, supra, and distinguished the case of Great Western Life Insurance Company v. Sparks, supra. A number of English cases were cited with approval recognizing an exception to the general rule where a party whose actions are in question is dead and unable to testify and his intention is material. It was also pointed out that the evidence of general reputation was of slight probative value; that the law presumed that deceased bore such reputation as the evidence tended to prove, and that it was not shown that substantial prejudice resulted by the admission of such evidence.

The case of Hammett v. State, 42 Okla. 384, 141 P. 419, was an action to recover a penalty under the provisions of section 3619, R. L. 1910, where defendants owned a building wherein intoxicating liquor was kept and sold. In that case it was held that the evidence of the general reputation of defendants as law-abiding citizens was not admissible.

In the case of Wyrick v. Campbell, 67 Okla. 240, 170 P. 267, an action for damages based on fraud in a contract for the exchange of real estate, it was held that the trial court erred in admitting evidence of the general reputation of plaintiff for the reason that his reputation had not been put in issue by his adversary. See, also, Mitchell v. Fahey, 112 Okla. 251, 240 P. 612; Seybold v. Pierce, 171 Okla. 112, 44 P. (2d) 826.

The case of Munkers v. Farmers' & Merchants' Ins. Co., 30 Ore. 211, 46 P. 850, was an action on a fire insurance policy which was contested on the ground that the fire was set by the insured. In that case the court admitted evidence of the general reputation of plaintiff for honesty and fair dealing and as a peaceful, law-abiding citizen. This ruling was discussed as follows:

"The rule is well settled that evidence of the character of a party is not admissible in civil actions, except in those cases in which the issue involves his character. Hill's Ann. Laws, 842; 1 Greenl. Ev. sec. 54; 1 Whart. Ev. sec. 47. Now, the character of plaintiff is not involved in the issue in the case under consideration, nor does his recovery depend upon whether it is good or bad. It is true that if the allegation of the answer that he burned, or caused the property in question to be burned, should be proved, his reputation for honesty would be seriously affected; but so would that of a party against whom a charge of gross fraud, forgery, or deceit should be established in a civil action, and it has never been supposed that evidence of good character would be admissible on that account. It is not every allegation of fraud or wrongdoing that involves character, within the meaning of this exception; for, if it were so, the defendant's character would be in issue in most of the controversies in the courts of justice. The exception is of technical nature, and is confined to certain cases, from the nature of which character is of particular importance, such as actions for breach of promise, libel and slander. * * * seduction, and the like. In such cases character is directly involved in the issue, as affecting the amount of damages, and evidence in respect thereto is therefore held admissible. * * * It was so held in Stone v. Insurance Co., 68 Iowa, 737, 28 N. W. 47, and Schmidt v. Insurance Co., 1 Gray, 529, both of which are directly in point. They were actions on insurance policies, and the defense in each case was that the plaintiff had burned the property himself; and the court held that proof of his good character was inadmissible because it was not involved in the issue, and this ruling is supported by the adjudged cases. See 7 Am. & Eng. Enc. Law, 112, for reference to the authorities."

In the case of State v. Allen (Mo.) 271 S. W. 757, it is said:

"In action on a fidelity bond indemnifying against loss from embezzlement by an

employee who claimed to be entitled to amount he was charged with embezzling, evidence of his reputation for honesty, integrity, etc, held inadmissible, whether he was regarded as a party or witness, or both."

We quote further from the body of the opinion:

"There are numerous decisions of this court dealing with the admissibility of evidence relating to the general character and reputation of an individual, in the trial of a civil action, when such individual occupies toward the action the relation of (a) party, or (b) witness. With respect to a party, we have constantly ruled that evidence concerning his general character is inadmissible, except in cases where the very nature of the action itself 'puts the character in issue.' Milan Bank v. Richmond, 235 Mo. 532, 139 S. W. 352; Black v. Epstein, 221 Mo. 287, 305, 120 S. W. 754; Dudley v. McCluer, 65 Mo. 241, 27 Am. Rep. 273. ' "Putting character in issue is a technical expression which does not mean simply that the character may be affected, but that it is of particular importance in the suit itself, as the character of plaintiff in an action of slander, or that of a' woman in a suit for seduction." * * * In those excepted cases, character affects the amount of the recovery. The jury are, by law, permitted to consider it in assessing damages, and it is in that sense that it is said that "the nature of the action puts the character in issue." ' Dudley v. McCluer, supra. Vawter v. Hultz, 112 Mo. 633, 20 S. W. 689."

The authorities could be multiplied on the proposition that the character of a party to a civil action is put in issue only in a certain specified class of actions hereinabove enumerated, in which character may be the very matter in issue in determining the right to and the extent of recovery. This is the viewpoint adopted by a vast majority of authorities. See Annotation, 78 A. L. R. 644. The rule has been heretofore adopted and approved by this court. The cases above referred to in which such evidence was properly admitted involve certain elements which easily distinguish them from the cases which adhere to the majority rule. There are, however, eminent and respectable authorities to the contrary. Grant v. Pendley (Tex. Com. App.) 39 S. W. (2d) 596; 78 A. L. R. 638; Brannon v. Gartman (Tex. Com. App.) 288 S. W. 817; Mays v. Mays, (Ga.) 113 S. E. 154; Hess v. Marinari (W. Va.) 94 S. E 968; Rasmusson v. North Coast Fire Ins. Co., 83 Wash. 569, 145 P. 610.

As we view it, the majority rule is supported by the better reasoning and tends to promote a more orderly procedure. It has been said that it is a far safer rule that in conformity to general rules of evidence in civil cases each transaction should be ascertained by its own circumstances, and not by the character of the parties. Great Western Life Ins. Co. v. Sparks, supra. If in all cases in contract and, tort such evidence were received, the result would be more dependent on the popularity of the party than on the merits. Testimony would consist largely of matters of opinion and be greatly affected by bias and partisanship and would cause intolerable delay and expense. The business of the court is to try the case and not the man and a very bad man may have a very righteous cause. Jones on Evidence, vol. 1, sec. 148

Defendants contend that the trial court was not justified in granting a new trial for the reason that the error complained of was not legally objected to, overruled, and exceptions saved. An examination of the record discloses that this contention is without merit.

The action of the trial court in granting a new trial is affirmed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur. RILEY, J., dissents.