**Vivien HOOD and Feagin Hood, Husband and Wife, Appellants,**

**v.**

**.Ernest HAGLER and Charles Musick, Appellees.**

**No. 49991.**

Supreme Court of Oklahoma.

Nov. 27, 1979.

Rehearing Denied March 3, 1980.

---

13. *Wilson v. Foster,* Okl., 595 P.2d 1329, 1333 [1979]; *Neumann v. Tax Commission,* Okl., 596 P.2d 530, 532 [1979].

McConnell & Prescott, Oklahoma City, for appellants.

Manners, Grennan, Cathcart & Lawter, Oklahoma City, for appellee, Ernest Hagler.

Jim W. Lee, Oklahoma City, for appellee, Charles Musick.

BARNES, Justice:

This case arises out of a dog bite incident which took place within the city limits of Oklahoma City. The incident occurred upon property belonging to Ernest Hagler, who allegedly owned one of the dogs involved in the attack. The other dog belonged to the defendant, Charles Musick, who leased a portion of the Hagler premises. Approximately a year prior to the incident, the plaintiff, Ms. Hood, had gone to the Musick residence to purchase some homegrown tomatoes from the Haglers. We would point out that the Haglers were not in the business of selling tomatoes, but had agreed to sell tomatoes to Ms. Hood at the request of a mutual acquaintance, who for years had sold produce to Ms. Hood, but who no longer did so. Since that visit, plaintiff had not seen defendants nor communicated with them.

On the day in question, the plaintiff, being in the neighborhood, decided to stop by and see if the Haglers had any produce to sell. Upon arriving at the Haglers, the plaintiff parked in the common driveway between the Haglers' residence and that of their lessee, Mr. Musick. She got out of the car and proceeded up the driveway to the back door, where she was surprised to see two large dogs roaming free and unrestricted. Ms. Hood testified that on her previous visit she saw no dogs or any evidence of dogs, and was not aware that dogs were on the premises. At this point, according to Ms. Hood, the dogs began weaving back and forth and snapping at her. She was gradually forced back because of the animals' advance. As she turned to enter her car, she was bitten in the leg by one of the dogs. As a result of this bite and complications arising therefrom, Ms. Hood was hospitalized and underwent surgery. Subsequently, she brought an action against both Mr. Hagler and Mr. Musick. Mr. Hood also brought an action against the same defendants for loss of consortium and medical expenses incurred or to be incurred.

At trial the jury returned a defendants' verdict and the Hoods have perfected an appeal to this Court.

The suit brought by the Hoods was predicated upon both Oklahoma's "dog bite" statute, 4 O.S.1971, §§ 42.1 and 42.2, and common law liability. As the trial court found there was insufficient evidence of scienter, it refused to submit the common law action to the jury and submitted the case to the jury solely upon the statute cited above.

Title 4 O.S.1971, § 42.1, provides:

"The owner or owners of any dog which shall, without provocation, bite or injure any person while such person is in or on a public place, or lawfully in or upon the private property of the owner or owners of such dog, shall be liable for damage to any person bitten or injured by such dog to the full amount of the injury sustained."

Section 42.2 of the same title defines what is meant by "lawful presence" on the owner's property. That Section provides:

"For the purpose of this Act a person shall be considered to be lawfully upon the private property of the owner of a dog when he is on such property in the performance of any duty imposed upon him by the laws of the State or by the laws of the United States, or the postal regulations of the United States, or when reading meters, or making repairs for a public utility or service located on such premises, or when working on said property at the request of the owner or a tenant having a lease upon any portion of said property, *or when on such property upon the invitation, either expressed or implied, of the owner or lessee of such property. . . ."* [Emphasis added]

On appeal, the Appellants assert that the trial court erred in submitting the question of liability to the jury, since, as a matter of law, they were entitled to a directed verdict. Alternatively, the Appellants argue that if the issue was one properly presented to the jury, the trial court committed reversible error in erroneously instructing the jury with respect to implied invitation and provocation.

Additionally, the Appellants assert that the trial court erred in not submitting the case to the jury on common law liability based upon the defendants' harboring a vicious animal with knowledge of its vicious propensities.

## I.

We will first consider whether the Appellants were entitled to a directed verdict on the question of liability based upon the provisions of 4 O.S.1971, § 42.1. Under the provisions of that statute, a plaintiff, in order to establish liability, has the burden of proving four elements:

1. Ownership of the dog(s) by the defendant;

2. Lack of provocation;

3. That the plaintiff was bitten or injured by the dog involved;

4. That the plaintiff was lawfully on the premises at the time of the attack.

In arguing that they were entitled to a directed verdict on the question of liability, the plaintiffs assert that, as a matter of law, they proved all four of these elements. We do not agree.

█ One of the questions presented at trial was whether the dogs that attacked Ms. Hood were the dogs owned by the defendants. On cross-examining Ms. Hood, the defendants established slight inconsistencies in her description of the dogs given at different times. Additionally, evidence was introduced to show that dogs of a similar breed frequently roamed the neighborhood. Indeed, the defendants testified that on occasion they had to chase these stray dogs from their yard, as they were attempting to eat food provided for the defendants' dogs. This being the case, we hold that a fact question as to the ownership of the dogs was presented, and that the trial court therefore was correct in submitting the question of liability to the jury. That is not to say, however, that the question was presented properly.

## II.

In submitting the question of liability to the jury, the trial court instructed the jury that they were to determine whether Ms. Hood was lawfully upon the premises at the time of the attack, and whether lack of provocation had been proven. Appellants argue that neither of these issues should have been submitted to the jury, and that the trial court's action therefore constituted reversible error. We will first consider whether the question of lack of provocation should have gone to the jury.

At trial, the only eye-witness of the attack was Ms. Hood. None of her actions, as described by her, constituted provocation. The only other evidence in the transcript with respect to provocation was Mr. Musick's testimony that, based upon his experience with animals and his experience at the

Oklahoma City Zoo and his observation of both his dog and the Haglers' dog, it was his opinion that neither of the dogs would have attacked unless provoked. This evidence was objected to and objection was overruled. If that evidence was properly admitted, a question for the jury was presented.

█ In determining the admissibility of Mr. Musick's testimony, we think it is important to note that Mr. Musick's testimony is appropriately characterized as character evidence. As a general rule, the character of a party or third party in a civil action is not a proper subject of inquiry, for, while it is recognized that a logical inference as to whether or not a person committed a certain act may be furnished by the fact that his character is such as might reasonably be expected to predispose him toward or against such an act, this consideration is outweighed by the practical objections to opening the door to this type of evidence.[1] In the case before us, Mr. Musick offered his opinion of the dogs' character based upon his observations. Then, based upon his opinion of the dogs' character, he testified that in his belief the dogs would have acted in a particular way on the day in question—that is, they would not have attacked unless provoked. We hold that such evidence was admissible for the following reasons:

The character or disposition of an animal is no less relevant than that of a human being, as indicating its probable conduct on a particular occasion, and at the same time is not open to many of the objections to the admission of character evidence of humans. It is, therefore, according to Wigmore, Evidence, § 68a (3d Ed.), commonly conceded to be admissible.

Indeed, in cases such as the one before us, where the plaintiff is the only witness to the attack, evidence as to the dog's behavior both before *and after* the attack is desira-

---

1. E. g., *Baker v. First Nat. Bank of Santa Rosa, N.M.*, 176 Okl. 70, 54 P.2d 355 (1936), (a case to recover a stolen negotiable instrument, in which the Court held that evidence of the defendant's character and reputation was inad-missible, as the defendant's character was not an issue in the case). Also see 1 Wigmore, Evidence, § 64 (3d Ed.), and McCormick, Evidence, § 188 (2d Ed.).

ble, as the dog, unlike a human, cannot testify as to what took place. Therefore, it is important to know the disposition of the dog involved. This is particularly true in light of the fact that one can hardly expect plaintiffs in such cases to willingly volunteer evidence of possible provocation on their part. Thus, we believe it is important for the jury to be aware of the dog's disposition.

In so ruling, we are not unmindful of the fact that it is equally unlikely for defendant dog-owners in such cases to characterize their pets as mean or vicious. In the case before us, we have only the defendants' testimony regarding the character of the dogs involved. Countering this is evidence of one of the dogs having bitten subsequent to the attack on Ms. Hood, and Ms. Hood's testimony as to what took place on the day of the attack. Having held that the testimony of the defendants was admissible, it is clear that a fact question was presented, and that the trial court did not err in submitting the issue of lack of provocation to the jury.

### III.

■■ We now consider whether the trial court erred in instructing the jury to determine whether Ms. Hood was lawfully upon the premises at the time of the attack. As the material facts regarding Ms. Hood's presence on the defendants' property were undisputed, we hold that the only issue to be determined was a legal one, and that the trial court therefore committed error in submitting that issue to the jury. Because the legal question should have been answered in favor of the plaintiffs, we hold that such error was prejudicial, and therefore reversible error.

The material facts surrounding Ms. Hood's presence at the Haglers' home were undisputed. It was undisputed that Ms. Hood had purchased produce from the Haglers in the past. It was undisputed that Ms. Hood's visit to the Haglers on the day she was bitten was to purchase produce. It was undisputed that on her prior visit Ms.

Hood was welcome and treated in a friendly manner. Under these undisputed facts, we hold that, as a matter of law, Ms. Hood was lawfully on the premises, as that term is defined at 4 O.S.1971, § 42.2, for under the undisputed facts Ms. Hood was on the premises under an *implied invitation*. In so holding, we note that the definition of "lawfully on the premises" encompasses more than licensees and invitees. For example, a social guest, though on the premises by invitation, is not an invitee.[2] Despite this fact, such an individual would be covered under the statute, although not under the general definition of invitee. In the case before us, the plaintiff was at least an acquaintance of the Haglers, had been welcome there in the past, and entered for a purpose for which the Haglers had not objected before. This being the case, we think it would constitute a gross injustice to hold that Ms. Hood was not on the premises by virtue of an implied invitation. Accordingly, we hold that Ms. Hood's presence on the premises was lawful, and that the trial court's submission of the issues to the jury constituted reversible error.

### IV.

■ The next issue before us is whether the trial court was correct in not submitting the case to the jury on the basis of common law negligence—that is, submitting the question of liability to the jury based upon the defendants' knowingly harboring animals of a vicious propensity. In excluding this issue from the jury, the trial court found that there was not sufficient evidence of scienter (knowledge of the dogs' vicious propensity by the defendants) to justify submission of that issue to the jury.

The evidence presented at trial was as follows: The defendants' dogs were large and at least part German Shepherd. The dogs barked at those going to and from the area involved and while barking often got close enough to bite. The dogs were primarily kept "for protection" and were trained as "guard dogs". There is also evi-

2. See Restatement of Torts 2d, § 330, Comment h.

dence, mentioned above, that one of the dogs had bitten since the incident involved.

Although none of these facts alone would justify the submission of the issue of scienter to the jury,[3] we hold the combination of these facts justifies submission to the jury. Accordingly, we hold that the trial court committed reversible error in not letting this issue go to the jury.

## V.

Lastly, as the case must be remanded to the District Court for new trial, we consider whether or not, as part of her burden of proof, Ms. Hood is required to identify which of the two dogs of the defendants bit her. As indicated above, there was sufficient conflicting evidence as to the identification of the two dogs to warrant submission of that issue to the jury. If the jury accepts Ms. Hood's identification of the two dogs as the defendants' dogs, the question remains whether Ms. Hood must identify which of the two dogs bit her, in order to prevail. In the case before us, both defendants allegedly allowed his or her dog and that of the other defendant to roam freely back and forth between their land, and both of their dogs were allegedly involved in the attack upon Ms. Hood. Unfortunately, because Ms. Hood had her back to the dogs when bitten, she is unable to identify which of the two dogs bit her. In an analogous situation, in the landmark case of *Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1 (1948),* the Supreme Court of the State of California solved a similar problem by placing the burden of proof as to the issue of causation upon the two defendants. In that case, there was evidence that both of the defendants, at the same time, or immediately one after the other, shot at a quail, and in so doing shot toward the plaintiff who was uphill from them. The defendants in that case argued that judgment against both of them should not stand, as they were not

joint tort-feasors and thus jointly and severally liable, since they were not acting in consort, and that there was not sufficient evidence to show which defendant was guilty of the negligence which caused the injury. Although both the trial court and the appellate court admitted that the plaintiff had not been able to identify which of the defendants had caused the injury—that is, which one of their bullets struck—the judgment against both of the defendants was affirmed. In so ruling, the Court held that under the circumstances the burden of proof shifted to the defendants, stating:

"When we consider the relative position of the parties and the results that would flow if plaintiff was required to pin the injury on one of the defendants only, a requirement that the burden of proof on that subject be shifted to defendants becomes manifest. They are both wrongdoers—both negligent toward the plaintiff. They brought about a situation where the negligence of one of them injured the plaintiff, hence it should rest with them each to absolve himself if he can. The injured party has been placed by defendants in the unfair position of pointing to which defendant caused the harm. If one can escape the other may also and plaintiff is remediless. . . . ."[4]

As in the *Summers* case, we do not believe that the plaintiff should, under the circumstances before us, be placed in the position of having to point to which of the two dogs actually bit her. According to her testimony, both dogs were involved in the attack. Both defendants allowed their dogs to run freely. Under these circumstances, the burden should fall upon the dogs' owners to exonerate themselves by showing the bite was made by the other party's dog, if they can. Accordingly, we hold that under the facts presented, it is not necessary, on remand, for Ms. Hood, as part of her bur-

---

3. *Sink v. Moore*, 267 N.C. 344, 148 S.E.2d 265 (1966) (holding that a dog's habit of chasing vehicles and barking is not sufficient to classify him as vicious); and *Frazier v. Stone*, Mo., 515 S.W.2d 767 (1974), in which the Court held that the classification by the owner of a dog as a

"guard dog" that barks and lunges at people was not sufficient to show a vicious propensity.

4. 199 P.2d at page 4. Also see Prosser, Law of Torts (4th Ed.), § 41.

den of proof, to identify which of the two dogs involved in the attack actually bit her.

For the above stated reasons, we reverse the judgment of the trial court and remand the case for new trial, in which the issue of common law liability is to be submitted to the jury, along with the question of lack of provocation, damages, and ownership of the dogs. In so ruling, we hold that if the jury accepts Ms. Hood's identification of the dogs involved in the attack, as the defendants' dogs, such identification shall be sufficient to establish identification under the statute and under the common law, despite the fact that Ms. Hood is unable to identify which of the two dogs bit her.

REVERSED AND REMANDED WITH INSTRUCTIONS.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS, HARGRAVE and OPALA, JJ., concur.

DOOLIN, J., dissents in part.