Kimberly Sue WHITEFIELD, a minor by and through her father, Don R. Whitefield, as next friend, and Don R. Whitefield, Individually, Appellants,

v.

Larry M. STEWART, Appellee.

No. 48770.

Supreme Court of Oklahoma.

April 18, 1978.

John T. Edwards, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellants.

Jack S. Dawson, Oklahoma City, for appellee.

BARNES, Justice:

Appellee, Larry M. Stewart, brings this appeal seeking certiorari to review an opinion of the Court of Appeals, Division No. 2. By order of this Court dated February 14, 1977, we granted certiorari.

The pertinent facts are as hereinafter related. Appellee owned a full-grown Humbolt or woolly monkey, named Stockely. On June 27, 1974, six-year-old Kimberly Sue Whitefield, hereinafter referred to as Appellant Kimberly, who resided two doors from Appellee and his wife in a Del City, Oklahoma, residential neighborhood, was allegedly bitten by Appellee's monkey.

In the eight years Appellee owned Stockely, he was kept in their home and had played with over one hundred children without biting anyone. There was one incident five years before when Appellee's son was scratched while playing with the pet.

On the day of the accident in question, Appellee had chained Stockely to the top of a three-foot chain link fence which divided his yard from that of his new neighbor-to-be, Mrs. Helen Walker. On this day, Mrs. Walker was doing some general cleaning prior to moving into the house and met Appellee at the fence. She testified that Appellee told her the monkey was a little sulky and had been in a bad humor, but she played with him without incident. Appellant Kimberly was not present at that time.

After the visit with Mrs. Walker, Appellee chained the monkey to the center of the fence so he could not climb over and crossed the yard to water his garden. Thereafter, a scream was heard and Kimberly was seen heading toward Mrs. Walker's door.

Appellant Kimberly claimed the monkey bit her and brought suit by and through her father, Don R. Whitefield, as next friend, against Appellee for injuries sustained. The petition contained a second cause of action pleaded by Kimberly's father for the recovery of medical expenses he had incurred. Suit was filed based upon two theories: (1) liability for keeping a monkey of a vicious nature and disposition, and (2) negligence for failing to keep the monkey properly restrained. Appellee denied these allegations.

There was evidence that Appellant Kimberly had teased the monkey, swung a stick at him, and had thrown gravel and grass at him on several occasions, including an incident three or four days before the alleged bite. The record reflects Appellant Kimberly had been told to stay away from the monkey and not to tease him.

Appellee's wife, Helen Stewart, testified that approximately two weeks prior to the alleged bite, she observed the monkey chained to the fence and saw Appellant Kimberly kicking at the fence and running her foot along the fence. She said the monkey backed off and was hollering, and she told Kimberly to go home as she did not want the monkey teased or hurt. Her testimony also reflects another incident in which several children, including Appellant Kimberly, were yelling, hollering, and teasing the monkey. She stated that after this the monkey would back off when he saw children unless he knew them.

Appellant Kimberly testified she was given permission by Mrs. Walker to play with her puppy and watch the monkey from the Walker's yard, but was told not to tease the monkey. Kimberly stated she did not tease the monkey, but that suddenly he jumped up on the fence, grabbed her arm and bit her. At the trial, Kimberly testified she did not have her fingers inside the chain link fence; her deposition was otherwise.

Appellant Don Whitefield's trial testimony also conflicts with that of his deposition. His deposition testimony reflects the monkey pulled his daughter over the fence. At trial he testified this was not his deposition statement, that Kimberly was pulled into the fence, and then said he was uncertain what occurred because he was not present.

Expert witnesses on primate behavior testified that the woolly monkey belongs to a class of new world monkeys which are very popular pets, but that they were not domesticated because domestication is a genetic problem. One expert witness said that from the references she had read woolly monkeys made good pets. She did indicate that in her opinion an eight-year-old woolly monkey could have been entirely friendly with infants and young children and members of the family up to the time of this incident, but that hormone changes begin to occur about that age; that he could be friendly to an adult female and without provocation bite a young child. She stated this is the reason primates go to the zoo as they approach adulthood. An-

other expert witness testified that books he read indicate the woolly monkey is gentle and trusting and can be tamed, and added that, based on the evidence he heard and what he had read, there would be a very low probability that a tame woolly monkey would bite.

At the close of the evidence, the Appellant moved for a directed verdict and requested two instructions, citing *City of Tonkawa v. Danielson*, 166 Okl. 241, 27 P.2d 348 (1933); *Congress & Empire Spring Co. v. Edgar*, 99 U.S. 645, 25 L.Ed. 487 (1879), as authority. Appellee agreed with the substance of these requests, which were incorporated into the Trial Court's Instruction No. 4:

> "If the owner should, by reason of observation or past experience, have knowledge that a human being might aggravate and provoke the monkey into dangerous action, then the owner has the duty of exercising reasonable care, commensurate with the danger, to prevent the monkey from attacking such human being, provided that the owner has observed the actions of the monkey and the human being, sufficiently to convince a person of ordinary prudence that the monkey might attack that person."

From a judgment on a jury verdict for Defendant-Appellee Stewart, an appeal was taken by Appellants complaining of instructional and evidentiary errors. The Court of Appeals, Division No. 2, reversed and remanded for a new trial, holding that the facts admitted by Appellee established his liability for Appellant's injury and that Appellant's motion for a directed verdict as to such liability should have been sustained, leaving only the matter of damages to the jury.

Appellee's Petition for Certiorari and brief in support rely on *City of Tonkawa v. Danielson, supra.* For many years animals were divided into two classes; wild and tame. The owner of such animal was strictly liable for any damages done by a wild animal. Early text writers discouraged this approach. *City of Tonkawa v. Danielson, supra*, quoted with apparent ap-

proval the language found in 3 Corpus Juris at page 87, which divided animals into five classes, not two:

"For the purpose of determining the rules of law applicable to cases involving injuries committed by animals, they may be divided in five general classes, namely: (1) Animals ferae naturae, of known savage and vicious nature, as bears, lions, tigers; (2) animals ferae naturae which generally may be domesticated or tamed as to lose their native ferocity, as bees, monkeys, etc.; (3) domestic animals which are known by their owner or keeper to be vicious; (4) domestic animals not known by their owner or keeper to be vicious, and (5) domestic herbivorous animals prone to wander and consume crops, grass and herbage."

We further quoted in *City of Tonkawa, supra,* also with apparent approval, the following language from *Congress & Empire Spring Co. v. Edgar, supra*:

"Certain animals ferae naturae may doubtless be domesticated to such an extent as to be classed, in respect to the liability of the owner for injuries they commit, with the class known as tame or domestic animals; but inasmuch as they are liable to relapse into their wild habits and to become mischievous, the rule is that if they do so, and the owner becomes notified of their vicious habit, they are included in the same rule as if they had never been domesticated, the gist of the action in such a case, as in the case of untamed wild animals, being not merely the negligent keeping of the animal, but the keeping of the same with knowledge of the vicious and mischievous propensity of the animal."

The issues raised by the Appellants were: (1) The Trial Court erroneously held that liability was controlled by negligence and erred in so instructing the jury; (2) the Trial Court admitted evidence that the minor plaintiff had on previous occasions teased the defendant's pet, which evidence coupled with the court's instructions concerning provocation, was prejudicial.

In order to answer Appellant's first contention, we must examine the court's instructions. Instruction No. 3 provided in part that:

"Unless the plaintiffs have proved that the defendant was negligent with respect to said monkey, as defined in these instructions, . . . the plaintiffs are not entitled to recover damages."

Instruction No. 4 followed generally the language in *City of Tonkawa, supra*:

"If the monkey has not displayed vicious habits then the owner is only required to exercise reasonable care, commensurate with the danger, to prevent it from injuring human beings who come in contact with it in the normal course of it being kept, such reasonable care being measured by the owner's knowledge of the probability that in some circumstances it may become excited or agitated, and its freedom of movement allowing it to come in contact with human beings with whom it is not acquainted. This applies even though a human being, with whom the monkey comes in contact in the normal course of its being kept, might unwittingly provoke it into making an attack.

"The owner has no duty to anticipate that a human being, not being in contact with the monkey in the normal course of its being kept might unintentionally or unwittingly provoke it.

"If the owner should, by reason of observation or past experience, have knowledge that a human being might aggravate and provoke the monkey into dangerous action, then the owner has the duty of exercising reasonable care, commensurate with the danger, to prevent the monkey from attacking such human being, provided that the owner has observed the actions of the monkey and the human being, sufficiently to convince a person of ordinary prudence that the monkey might attack that person."

While these instructions tend to apply the law as it existed under the authority of *City of Tonkawa, supra,* they do not take into account the increasing number of jurisdic-

tions which are imposing absolute liability on owners of domesticated animals, such as dogs. In 1947 our Legislature enacted a modified version of absolute liability for owners of dogs, 4 O.S.1971, § 42.1, which provides:

"The owner or owners of any dog which shall, without provocation, bite or injure any person while such person is in or on a public place, or lawfully in or upon the private property of the owner or owners of such dog, shall be liable for damages to any person bitten or injured by such dog to the full amount of the injury sustained."

Under this statute a dog owner is only liable where without provocation the animal bites or injures a person. If a tame animal that is domesticated, such as a dog, makes its owner absolutely liable under the statute, then it appears to us that at least the same responsibility and liability would be applicable to owners of a tamed wild animal.

■ 1 Okl.L.Rev. 111, "Torts: Statutory Liability of Dog Owner", which deals with § 42.1, supra, notes the Legislature came very near to imposing absolute liability on the owner of a dog for any injuries inflicted by the dog. It further reflects the struggle between applying the common law rule while keeping the application in line with a desirable public policy. It states there is a feeling on the part of the public generally that one who chooses to harbor a dog on his premises should be responsible for the acts of the animal; and, in the absence of provocation by the victim, the public looks to the owner for redress. We think this philosophy directly applicable to the case at bar involving a tamed wild animal, such as a monkey, and hold that one who chooses to harbor a monkey on his premises is responsible for the acts of the animal to the same extent as provided in 4 O.S.1971, § 42.1, supra, in the case of owners of dogs. Thus, if in the case at bar the monkey bit Kimberly without provocation by Kimberly, then Appellee would be liable for damages for the full amount of the injury sustained. There is no contention Kimberly was not lawfully in or upon the premises of the Appellee at the time.

■ From our review of the evidence, we think a question exists as to whether or not the monkey bit Kimberly. At deposition the girl testified her hands were through the chain link fence. At trial she said they were on top. Pictures of the chain link fence introduced into evidence indicated the pointed nature of the wire on top. This would seem to indicate the unlikelihood of the child's resting her arms there.

The action was defended in the Trial Court on the proposition that the monkey jumped or startled the girl or that she threw something at him and then hurriedly jerked her arm out of the fence. The possibility exists that in jerking her arm out she caught it on the fence, causing injury.

■ We also find that the Trial Court's admission of evidence that the minor plaintiff had on previous occasions teased the defendant's pet was not error. It would be probative in determining if there was provocation.

We, therefore, hold that the case must be remanded to the Trial Court and submitted to the jury on the question of provocation and whether or not Appellant Kimberly was bitten by the monkey or injured her hand on the sharp fence projections.

CERTIORARI GRANTED; DECISION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE TRIAL COURT REVERSED WITH DIRECTIONS.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, IRWIN and DOOLIN, JJ., concur.

WILLIAMS and SIMMS, JJ., concur in result.

BERRY, J., dissents.