CENTRAL AMBULANCE SERVICE,
INC., Appellant,

v.

CITY OF TULSA, Appellee.

No. M–83–646.

Court of Criminal Appeals of Oklahoma.

April 4, 1986.

Lynn A. Mundell, Kivell & Mundell, Tulsa, for appellant.

Neal McNeill, City Atty., John L. Geb, Asst. City Prosecutor, for appellee.

## OPINION

BRETT, Judge:

Appellant, Central Ambulance Service, Inc., was convicted of two misdemeanors in the Municipal Criminal Court of the City of Tulsa, Case Nos. CORP–82–2 and CORP–82–3. Each of the charges were a violation of operating an ambulance for hire within the Tulsa corporate limits on routine transfer without a valid permit. Title 37 Revised Ordinances of the City of Tulsa, Chapt. 13, Section 503 A 1. The two cases were consolidated for trial and appellant was fined $100 and costs.

The parties stipulated to the facts and submitted the case for a trial by the court on the stipulations. The only issues presented in this case are questions of law. Appellant contends Title 37, Revised Ordinances of the City of Tulsa Chapter 13, Sections 501–525 (1978) and specifically Section 503 A 1 is unconstitutional. Appellant believes it is an invalid exercise of police power for the city to regulate non-emergency transfers by ambulance and that the city is precluded from such regulation by the State licensing. Appellant further claims this is a restraint of trade and is a breach of the antitrust laws of Oklahoma and the United States.

At the time this case arose appellant had a valid ambulance service license issued by the State of Oklahoma. Appellant had been operating an emergency and non-emergency ambulance service in Tulsa with both State and Municipal permits for over twenty (20) years. Effective May 1 and October 1, 1978 Tulsa revised its ambulance service. The Emergency Medical Services Authority, EMSA, a public trust, was created and was delegated the duty to establish and operate an ambulance service for Tulsa. Title 37, Chapter 13 of the Revised Ordinances of the City of Tulsa and the Oklahoma Trust Act, 60 O.S.1971, §§ 176 to 180. Three classifications of ambulances were recognized and they were designated as Code 1, 2 and 3. Code 1 is a life threatening condition and Code 2 is a lesser designation of the same ilk. Code three "means a non-emergency trip involving the routine transport of patients." It is this third catagory that is in question in this case.

■ Appellant's first proposition of error is an objection that it is an abuse of the police power for the city to regulate non-emergency ambulance transportation. In developing this argument appellant allows the state can, and in this case, has granted it a state license to operate an ambulance service in Oklahoma. Appellant has characterized the state license it holds as a "property right" and argues the city is infringing on that right with the ordinance in question.

Appellant correctly states the law, which is that: "[a] state statute will supercede and control over a city ordinance whose intent conflicts with that of the state." See Moore v. City of Tulsa, 561 P.2d 961 (Okl.Cr.1977). Appellant stipulated the two violations were routine transfers for hire, and that they were "licensed by the State of Oklahoma for all purposes concerning the operation of an ambulance service" but they did "not have a valid ambulance permit" from the City of Tulsa.

This argument has no bearing on this case since the state statutes regarding ambulance service specifically exclude non-emergency transfers. By definition the state statutes have eliminated Central's "non-emergency transfers" from constituting an ambulance service:

2. "Ambulance" means any ground, air or water vehicle designated and equipped to transport and provide emergency medical patient care to one or more acutely ill or injured persons: Ground vehicles used as ambulances shall meet requirements as defined under the definition of "basic life support" in paragraph 7 of this section;

.    .    .    .    .

7.a. (7) Vehicles and equipment used only for non-emergency transfer are exempt from the above requirements. The crew shall consist of, as a minimum, two (2) people, one driver and one licensed EMT. Vehicles designated only as non-emergency transport will not be used for emergency response except in the case of a disaster situation. These vehicles shall not be marked or listed as ambulance vehicles.

Emergency Medical Services Improvement Act, 63 O.S.Supp.1977, § 330.77, as amended.

By virtue of the stipulation of facts in this case, state licensure is not a factor. Therefore, there is no conflict between state and city licensing to be resolved by this court.

■ The next issue reached is the city's authority to regulate public transportation on its streets. Municipalities have the authority, granted by state statute, to license various occupations. In 11 O.S.Supp.1984, § 22–107 it is stated:

Municipal licenses and license fees shall be regulated by ordinance. A municipality may establish such license requirements as it deems appropriate in the exercise of its police power ...

The statutes also specifically acknowledge a city's right to contract for ambulance service with various types of entities and make specific reference to "public trusts". 11 O.S.Supp.1984, § 23–105. We find, therefore, that the City of Tulsa has

the authority under the police power granted it by the state to regulate ambulance service within its jurisdiction. *King v. City of Tulsa*, 415 P.2d 606 (Okl.Cr.1966).

Since appellant stipulated to the fact it was attempting to operate an "ambulance" service for hire we limit our review accordingly. The city could have excluded non-emergency transfers, as the state did, from its ambulance ordinance and Central may have then come under whatever taxi, limousine or other hired car regulations that may exist in Tulsa. In the instant case if appellant had not stipulated it was an ambulance, a more accurate charge may have been the enforcement of taxi, limousine or bus licensing, if any, rather than the ambulance issue.

Finding the regulation of ambulances and public transportation is a permissible function of the City of Tulsa we must then consider appellant's final proposition of error which is the question of an abuse of that power by the ordinance in .question. *See King*, 415 P.2d at 611, 612. The ordinance has established a standard for which vehicles will be considered "ambulances" and how they shall be operated to retain that designation. The issuance of licenses and permits is the manner in which law enforcement personnel and the public can determine if that standard is being met. The criteria set by the ordinance presupposes the persons needing this special transportation may also need life sustaining assistance during transportation. Coextensive with that presumption is the right to have the usual traffic regulations suspended if need be. We have examined those standards and find they are reasonable. *See Gold Cross Ambulance and Trans. v. City of Kansas City*, 705 F.2d 1005 (8th Cir.1983).

We also find Central is not being arbitrarily denied a permit or the exercise of its "valuable property right". Central apparently chose not to meet the standard and apply for a permit. Central is before this Court on the offense of operating without a city permit, not the issue of having applied for a permit and being denied one. That

issue would not have been within this Court's jurisdiction. We do not find a constitutional abuse in the limited portion of the ordinance presented to this Court for review. Judgment and sentence is therefore AFFIRMED.

PARKS, P.J., and BUSSEY, J., concur.