Dear Representative Ritze:
This office has received your request for an official Opinion of the Attorney General in which you ask the following question:
 Does a municipality have the authority to enact and enforce a municipal ordinance that prohibits the sale, delivery or distribution of pseudoephedrine, its salts or optical isomer, or salts of optical isomers, without a valid prescription written by a practitioner who is licensed to prescribe controlled dangerous substances?
Your question requires a comparison of the power of Oklahoma's cities and towns to regulate conduct vis-a-vis, the power of the Legislature to regulate the same conduct.
 REGULATION OF THE DISPENSING, SALE OR DISTRIBUTION OF PSEUDOEPHEDRINE UNDER STATE STATUTES
Under the Oklahoma Statutes, pseudoephedrine[1] is generally classified to be a controlled substance under Schedule V[2] of Oklahoma's version of the Uniform Controlled Dangerous SubstanceAct.[3] The Legislature has identified and set forth the characteristics it recognized in classifying pseudoephedrine a Schedule V controlled substance in the Act:
 Schedule V includes substances with the following characteristics: *Page 2 
 1. Low potential for abuse relative to the controlled substances listed in Schedule IV;
 2. Currently accepted medical use in treatment in the United States; and
 3. Limited physical dependence or psychological dependence liability relative to the controlled substances listed in Schedule IV.
63 O.S. 2001, § 2-211[63-2-211]. In this schedule, the Legislature recognizes that the use of pseudoephedrine may be therapeutic, its use has a lower potential for abuse than Schedule IV substances, and poses only limited physical or psychological dependence in comparison with Schedule IV substances.[4] The "unauthorized" dispensing or distribution of Schedule V pseudoephedrine is a felony crime.[5]
The Act specifically addresses the manner in which pseudoephedrine is authorized to be dispensed, sold or distributed. Initially, it should be observed that not every compound, mixture or preparation containing pseudoephedrine is included within Schedule V of the Act. Instead, when pseudoephedrine is not the only active ingredient included within such compound, mixture or preparation that is dispensed in liquid, liquid capsule or gel capsule form, it is expressly excluded from Schedule V, and consequently,excluded from all of the regulatory provisions of the Act:
 B. The Schedule, as specified in paragraph 2 of subsection A, shall not apply to any compounds, mixtures, or preparations which are in liquid, liquid capsule, or gel capsule form if pseudoephedrine is not the only active ingredient.
63 O.S.Supp. 2010, § 2-212[63-2-212](B) (emphasis added). Accordingly, under the Oklahoma Statutes, such excluded compounds, mixtures or preparations, not being regulated as controlled substances under Schedule V of the Act, are always "authorized" to be dispensed, sold or distributed. *Page 3 
The Legislature also authorized pharmacies, within the confines of a statutory procedure and volume limitation, [6] to dispense, sell, or distribute Schedule V pseudoephedrine without a prescription.[7] Instead of requiring Schedule V pseudoephedrine to be dispensed, sold or distributed by a pharmacy only upon presentation of a lawful prescription, the Legislature chose to allow such transactions to be made "under the supervision" of a licensed pharmacist or registered pharmacy technician,and to require the person purchasing, receiving or acquiring the pseudoephedrine to produce one of certain defined forms of positive identification, and also to sign a log, receipt, program or mechanism approved by the Oklahoma Bureau of Narcotics and Dangerous Drugs Control recording certain specific information relevant to the transaction:
 A. The controlled substances listed in this section are included in Schedule V.
 . . . .
 2. Any compound, mixture, or preparation containing any detectable quantity of pseudoephedrine, its salts or optical isomers, or salts of optical isomers. If any compound, mixture, or preparation as specified in this paragraph is dispensed, sold, or distributed in a pharmacy:
 a. it shall be dispensed, sold, or distributed only by, or under the supervision of, a licensed pharmacist or a registered pharmacy technician, and
 b. any person purchasing, receiving, or otherwise acquiring any compound, mixture, or preparation shall produce a driver license, passport, military identification, or other state-issued identification card and shall sign a written log, receipt, or other program or mechanism approved by the Oklahoma Bureau of Narcotics and Dangerous Drugs Control, showing:
 (1) the date of the transaction,
 (2) name of the purchaser,
 (3) driver license number, passport, military identification, or state-issued identification number and state of residence of the purchaser, *Page 4 
 (4) name and initials of the pharmacist or pharmacy technician conducting the transaction,
 (5) the product being sold, and
 (6) total quantity, in grams or milligrams, of pseudoephedrine purchased.
 No person shall purchase, receive, or otherwise acquire more than nine (9) grams of any product, mixture, or preparation within any thirty-day period.[8] Provided, the requirements of this subsection shall not apply to any quantity of such product, mixture or preparation dispensed pursuant to a valid prescription.
63 O.S.Supp. 2010, § 2-212[63-2-212](A)(2) (emphasis added) (footnote added).[9]
Pharmacists and registered pharmacy technicians are not among those persons authorized to prescribe controlled substances under the Act, but are plainly authorized to supervise the dispensing, sale or distribution of pseudoephedrine within the limits provided by law without the necessity of a lawful prescription.[10]
Finally, "practitioners"[11] who are authorized by statute to issue prescriptions for controlled substances, [12] may lawfully order the dispensing, sale or distribution to their patients of pseudoephedrine in quantities in excess of what otherwise would be allowed by law. Schedule V pseudoephedrine dispensed, sold or distributed pursuant to a lawful prescription is always "authorized." *Page 5 
Further supporting the enforcement of this regulatory structure, all prescription and nonprescription sales of Schedule V pseudoephedrine are monitored through a real time electronic logbook administered by the Oklahoma Bureau of Narcotics and Dangerous Drug Control[13] and by criminal penalties.[14]
Although the Legislature could have chosen to prohibit the dispensing, sale or distribution of pseudoephedrine except upon the order of a lawful prescription, it chose instead to adopt a different regulatory structure. Under the statutory procedure regulating pseudoephedrine that controlled substance is "authorized" to be dispensed, sold or distributed upon either of the following two procedures. Pseudoephedrine is always permitted to be dispensed, sold or distributed upon the presentation of a lawful prescription; in which case this controlled substance may be dispensed without restriction regarding quantity pursuant to the directions contained in the prescription. Alternatively,limited quantities of pseudoephedrine are authorized to be dispensed, sold or distributed by a pharmacy without a lawful prescription if done under the direct supervision of a licensed pharmacist or registered pharmacy technician; provided, the customer must also present positive identification in a form authorized by law and the customer must sign an approved log containing certain statutorily prescribed information about the transaction.
 MUNICIPALITIES ARE NOT AUTHORIZED TO PROHIBIT THE DISPENSING, SALE OR DISTRIBUTION OF PSEUDOEPHEDRINE EXCEPT UPON LAWFUL PRESCRIPTIONS
Under the Oklahoma Statutes "`[m]unicipality' means any incorporated city or town[.]" 11 O.S. 2001, § 1-102[11-1-102](5). Municipalities are divided into two distinct categories, non-charter municipalities and charter municipalities.[15] No State statute expressly authorizes Oklahoma municipalities to enact ordinances regarding the dispensing, sale or distribution of pseudoephedrine.
Non-charter municipalities are creatures of State statute, and may only exercise those powers expressly conferred upon them by the Legislature in a manner not inconsistent with the Constitution and statutes of Oklahoma, together with those inherent powers necessary to carry out their expressed powers. In this regard, the Legislature has declared:
 The municipal governing body may enact ordinances, rules and regulations not inconsistent with the Constitution and laws of Oklahoma for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal *Page 6 
functions. Municipal ordinances, rules or regulations may be repealed, altered or amended as the governing body ordains.
11 O.S. 2001, § 14-101[11-14-101] (emphasis added).
The Oklahoma Supreme Court has specifically observed:
 The power of non-charter municipalities are such as are expressly granted or necessarily implied from a statute. Legislative dominion over the scope of general public concern is by the State denied to all municipal governments.
Morehead v. Dyer,518 P.2d 1105, 1107 (Okla. 1973) (emphasis added) (citations omitted). Charter municipalities are created pursuant to the Oklahoma Constitution, which provides in relevant part:
 Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State. . . . Upon such approval it shall become the organic law of such city and supercede any existing charter and all amendments thereof and all ordinances inconsistent with it.
OKLA. CONST. art. XVIII, § 3(a).[16] Charter cities may lawfully enact ordinances upon matters of purely local concern though the ordinances may conflict with State statutes. Charter cities may not enact ordinances that conflict with State statutes involving a general public concern.
 [A]ny city operating under a charter form of government, may utilize its police power to adopt ordinances necessary for the preservation of its citizens' health, safety, morals and general welfare. When both the Legislature and a home rule municipality have passed regulations in the same area, the test the municipal ordinance must survive in order to supersede the statute depends upon whether the power being exercised is purely municipal, or whether there is a wider public interest involved. Matters found to be of local concern in Oklahoma include: removal of a municipal judge, off-street parking, recall elections of municipal officers, widening of a state highway within city limits, and the form of city government a municipality adopts. Only when the local ordinance and state statute contain express or implied conditions inconsistent and irreconcilable with one another will they be characterized as conflicting. *Page 7 
Hampton by Hampton v. Hammons,743 P.2d 1053, 1059-60 (Okla. 1987) (footnotes omitted) (emphasis added).
In some instances, it has been found that matters are not of either purely general or purely local concern. In such occasions, it has been found that such matters are of concurrent jurisdiction.
 There are some matters which are of concern to both the city and state and not the exclusive concern of either. When this is the case, the two provisions governing the matter are cumulative and each is operative.
Id. at 1060. Matters found to have been of "concurrent" jurisdiction include the manner of removal of local public officials[17] and regulation of vicious dogs.[18]
A municipality that undertakes to enact an ordinance prohibiting the dispensing, sale or distribution of pseudoephedrine except upon the order of a lawful prescription removes an option carefully preserved by the Legislature for persons desiring to lawfully obtain pseudoephedrine without the necessity or burden of obtaining a prescription. Under the Legislature's present policy, a person residing in one municipality, or a person living in a rural portion of Oklahoma, may lawfully acquire pseudoephedrine in another municipality without the necessity of obtaining a prescription. A municipality adopting an ordinance prohibiting the dispensing, sale or distribution of pseudoephedrine without a prescription would necessarily conflict with the Legislature's regulatory policy by removing the ability of persons to lawfully acquire pseudoephedrine products within that community without first obtaining a lawful prescription. In enacting its present policy, the Legislature has exercised its legitimate power to address a general, state-wide concern, and has chosen to preserve the freedom of the consumer to acquire needed pseudoephedrine without the necessity, inconvenience and potential expense of first obtaining a legal prescription. Any attempt by a municipality under our current law, whether a charter municipality or a non-charter municipality, to prohibit the dispensing, sale or distribution of pseudoephedrine from a pharmacy without a legal prescription through the enactment of an ordinance would conflict with the general State policy currently regulating such transactions and such an ordinance would be unauthorized, void, and unenforceable.
 It is, therefore, the official Opinion of the Attorney General that:
 1. The Legislature of Oklahoma has acted to establish a policy for the lawful dispensing, sale and distribution of pseudoephedrine. 63 O.S. Supp. 2010, § 2-212(A)(2). *Page 8 
 2. The existing policy found in 63 O.S.Supp. 2010, § 2-212[63-2-212](A)(2), is a matter of general, state-wide concern and permits the dispensing, sale and distribution of pseudoephedrine in certain quantities under certain conditions without the necessity of obtaining a legal prescription.
 3. Municipalities, whether they are charter municipalities organized pursuant to Article XVIII, Section 3(a), of the Oklahoma Constitution, or whether they are non-charter municipalities organized under the Oklahoma Municipal Code, 110.S.2001 Supp. 2010, §§ 1-101-55-103, have no power to enact or enforce local ordinances prohibiting the dispensing, sale and distribution of pseudoephedrine without a legal prescription since such regulation intrudes upon a matter of general, state-wide concern and is not a matter of purely local or concurrent jurisdiction.
E. SCOTT PRUITT ATTORNEY GENERAL OF OKLAHOMA
CARLES S. ROGERS ASSISTANT ATTORNEY GENERAL CHIEF, MULTICOUNTY GRAND JURY UNIT
[1] As used herein, the word "pseudoephedrine" includes all of its salts or optical isomers, or salts of optical isomers.
[2] See 63 O.S.Supp. 2010, § 2-212[63-2-212](A)(2). The changes enacted by the Legislature to Section 2-212 in 2011, effective November 1, 2011, are not material to this Opinion. See
2011 Okla. Sess. Laws ch. 239, § 6.
[3]
63 O.S. 2001 Supp. 2010, §§ 2-101 — 2-701 [hereinafter Act]. 313 N.E. 21ST STREET • OKLAHOMA CITY, OK 73105 • (405) 521-3921 • FAX: (405) 521-6246 recycled paper.
[4] As an active ingredient in a medicine, pseudoephedrine is useful as a decongestant that is most often used to treat nasal or sinus congestion due to allergies or the common cold. The medication can also be abused by taking it for non-medicinal purposes. For instance, pseudoephedrine causes a stimulatory reaction in many individuals, causing a rapid heart rate, high blood pressure, and an excitable, hyperactive feeling. Athletes have been known to abuse pseudoephedrine to help them get "pumped" before a competition. People also sometimes use pseudoephedrine for its ephedra-like effects in an attempt to lose weight. Taking pseudoephedrine for non-medicinal uses can be dangerous. When abusing pseudoephedrine for weight loss or athletic performance, people sometimes take more than the recommended dose. This can lead to heart palpitations, irregular heart rhythms (arrhythmias), or even heart attacks. Pseudoephedrine is not addictive in the traditional sense. Although people who abuse it may find they need higher doses to achieve the desired effects, physical withdrawal symptoms are unlikely.See Emedtv.com, available athttp://cold.emedtv.com/pseudoephedrine/abuse-of-pseudoephedrine.html. Pseudoephedrine is also a necessary ingredient for clandestine manufacture of methamphetamine. See id.
[5] See 63 O.S.Supp. 2010, § 2-401[63-2-401] (A)(1), (B)(3). The punishment for this offense is imprisonment for not more than five years and a fine not to exceed one thousand dollars. Id.
Unlawfully possessing Schedule V controlled substances is a misdemeanor for a first offense, and a felony for a second or subsequent offense. See id. § 2-402(A)(1), (B)(2).
[6] Under 63 O.S.Supp. 2010, § 2-212[63-2-212](A)(2), it is unauthorized to purchase, receive or otherwise acquire more than nine grams of any product containing any quantity of pseudoephedrine to any person within a thirty day period without a lawful prescription.
[7] Id.
[8] The willful violation of this prohibition is punishable as a misdemeanor. See 63 O.S.Supp. 2010, § 2-411[63-2-411]. Knowingly dispensing, selling or distributing Schedule V pseudoephedrine to a person in excess of the statutory prohibition, would constitute aiding, abetting and encouraging such conduct, rendering such person also liable as a principal to the offense. See 21 O.S. 2001, § 172[21-172].
[9] See also, 63 O.S. 2001, § 2-312[63-2-312] (regarding who may lawfully prescribe controlled substances).
[10] See id. § 2-312.
[11] Under the Uniform Controlled Dangerous Substance Act, "Practitioner" means: "a. (1) a medical doctor or osteopathic physician, (2) a dentist, (3)a podiatrist, (4)an optometrist, (5)a veterinarian, (6) a physician assistant under the supervision of a medical doctor or osteopathic physician, (7)a scientific investigator, or (8) any other person, licensed, registered or otherwise permitted to prescribe, distribute, dispense, conduct research with respect to, use for scientific purposes or administer a controlled dangerous substance in the course of a professional practice or research in this state. . . ." 63 O.S.Supp. 2010, § 2-101[63-2-101](32).
[12] See 63 O.S. 2001, § 2-312[63-2-312]. Compare footnote 11. Such practitioners may only prescribe as may be further provided by statutes regulating their practice.
[13] See 63 O.S.Supp. 2010, § 2-309C[63-2-309C](A), (G).
[14] See footnotes 5 and 6.
[15] See A.G. Opin. 2004-15, at 84.
[16] This provision has been found to be self-executing. Stateex rel. Reardon v. Scales,97 P. 584 (syllabus ¶ 1) (Okla. 1908).
[17] Lee v. Norick,447 P.2d 1015 (syllabus ¶ 3) (Okla. 1968); State ex rel. Burns v.Linn, 153 P. 826, 826-27 (syllabus ¶ 5) (Okla. 1915).
[18] Hammons, 743 P.2d at 1059-60. *Page 1